# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| SHELLY BAUM-BRUNNER | : CIVIL ACTION |
|---|---|
| v. | : |
| | : NO. 17-3901 |
| SUSAN LYTLE, *et al.* | : |

KEARNEY, J.  February 23, 2018

## MEMORANDUM

Absent an extraordinary Order, all persons have access to court to redress harm under the Law. To ensure fairness, we require all persons, regardless of whether they retain a lawyer to help them, to follow specific rules of procedure including starting their case through a short and plain statement of their claim. From our inception across the street from this Courthouse, our federal courts have limited jurisdiction requiring a great variety of claims resolved in other forums. Today, we address a Philadelphia resident's amended complaint filed without the aid of an attorney which does not invoke our subject matter jurisdiction nor provide a short and plain statement of her claim. After much effort to understand a confusing and ambiguous pleading, we cannot find subject matter jurisdiction or facts to support conclusions of due process and civil rights violations by private persons or state law claims. We grant the Defendants' Motions to dismiss in the accompanying Order. As she proceeds without counsel, we grant Plaintiff leave to try one more time to plead claims which could plausibly continue here.

## I. Alleged Facts[1]

As best as we can discern giving her all due deference, Philadelphia resident Shelly Baum-Brunner alleges the University of Pennsylvania, Susan Lytle, Wendy White, Judith Rodin (collectively "University Defendants"), the Community College of Philadelphia ("Community

College"), The Philadelphian,[2] and as yet-unserved David Lowenberg harmed her during or after her doctoral program at the University of Pennsylvania (the "University"). Ms. Baum-Brunner alleges she suffered harm as a result of a University investigation into her doctoral dissertation twenty-seven years ago.[3] Ms. Baum-Brunner alleges the University investigated her doctoral dissertation as fraudulent, accusing her of cheating and making up the study and data on which she based her dissertation; defamed her; committed other unspecified abusive conduct; conspired to deprive her of her civil rights; and attempted to "get 'delusional disorder' diagnoses" against her to protect it from whistleblowing charges she made against Defendant Susan Lytle. Ms. Baum-Brunner alleges she has been diagnosed with post-traumatic stress disorder and a "family situation still in turmoil because of the 27 years of abuse, often related to Penn and to 'diagnosis' based on Penn's wish to see me as of unsound mind . . ." and frames her claims as "defamation, breaking rules of contracts in intentionally fraudulent ways, no due process etc. as well as more to the point and most significantly, intentional affliction of abuse and conspiracy to deny civil rights."[4]

## II. Analysis

The University Defendants, Community College, and The Philadelphian each move to dismiss Ms. Baum-Brunner's Amended Complaint. The Philadelphian and the Community College move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The University Defendants move to dismiss under Rule 12(b)(6) arguing, in part, Pennsylvania's two-year statute of limitations for tort claims and one-year statute of limitations for defamation claims bars Ms. Baum-Brunner's claims against them. The Philadelphian additionally moves under Federal Rule of Civil Procedure 12(f) to strike frivolous, scandalous,

2

and impertinent matter from the Amended Complaint. We grant the motions to dismiss without prejudice for Ms. Baum-Brunner to file a Second Amended Complaint if she can plead claims under the law.

Ms. Baum-Brunner is proceeding *pro se* and, as she has done so far, we expect she will try to amend to find a way to sue in federal court. A short primer on our standards in reviewing the present motions will assist the parties. A motion to dismiss under Rule 12(b)(1) challenges the court's "very power to hear the case."[5] Motions to dismiss pursuant to 12(b)(1) fall into two categories; a facial or factual attack to jurisdiction. A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"[6] A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'"[7] No presumption of truthfulness attaches to the plaintiff's allegations in a factual attack, and we may consider evidence outside the pleadings, the plaintiff has the burden of providing jurisdiction, and we are "free to weigh the evidence and satisfy [ourselves] as to the existence of [our] power to hear the case."[8]

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) we "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) we "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are

3

well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[11] *Pro se* complaints must be construed liberally, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[12]

The main concern with Ms. Baum-Brunner's Amended Complaint is its rambling litany of oft-repeated harms without specifics or a common theme. It is, at best, ambiguous and possibly unintelligible. We prohibit this type of rambling collection of laments. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." We may *sua sponte* dismiss a complaint for failure to comply with Rule 8, "but dismissal is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."[13] Rule 8 "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue."[14] Ms. Baum-Brunner's Amended Complaint approaches the level of confusion and unintelligible reserved for dismissal.

### A. We lack subject matter jurisdiction.

As possibly applicable to this case, we enjoy limited subject matter jurisdiction if Ms. Baum-Brunner pleads a federal question or everyone she is suing is a non-Pennsylvania citizen and the amount in controversy exceeds $75,000 exclusive of interest and costs.[15] In her first complaint, Ms. Baum-Brunner invoked our federal question jurisdiction asserting constitutional rights she identifies as the "right to not have statute of limitations extended"; "right not to have paid enemies fight against me"; "right for Miranda warnings"; "right to an attorney"; "right to no double jeopardy"; "right to freedom from harassment/stalking/harm"; "right to life, liberty and

4

pursuit of happiness"; "right to fair trial process"; "right to end harm;" "false pretense law broken for me by Penn re 'Deal' 2005"; and an illegible reference to Title 18 of the United States Code.[16] In her Amended Complaint, Ms. Baum-Brunner claims Defendants conspired to deprive her of her civil rights.

Ms. Baum-Brunner has never alleged a state actor deprived her of any right under the United States Constitution or any federal statute. She needs to find out and then plead, if she can in good faith, if Defendants accused of violating civil rights are state actors. "State action" and action "under color of state law" are required for any claims arising under the Fourteenth Amendment or 42 U.S.C. § 1983.[17] Without pleading a state actor, a federal claim brought by Ms. Baum-Brunner fails, and we have no federal question jurisdiction. Ms. Baum-Brunner's remaining claims are based on state law. As currently pleaded, we lack subject-matter jurisdiction. We will allow Ms. Baum-Brunner leave to amend her complaint to allege state action is she can plausibly do so.

### B. Ms. Baum-Brunner fails to comply with Rules 8(a) and 12(b)(6).

Even if we enjoyed subject-matter jurisdiction, Ms. Baum-Brunner fails to state plausible claims against Defendants. Ms. Baum-Brunner's appears to challenge the University's investigation, possibly as long as twenty-seven years ago, and a conspiracy to deny her civil rights. Ms. Baum-Brunner's array of charges against the University Defendants relate to an unspecified incident in 2004; "gas lighting" and an attempt by the University to "get 'delusional disorder' diagnoses" against Ms. Baum-Brunner to protect it from whistleblowing charges she made against it; and defamation. Ms. Baum-Brunner alleges The Philadelphian paid the rent of non-party Michele Richman in exchange for "sit[ting] of roof, so she could join the roof committee and try to get me to plagiarize again."[18] She alleges the Community College arranged

5

to "go after my fingerprints" to use "as evidence"; "tried to get [her] to sell . . . books in [her] condo"; told her "it was not really possible for [her] to do so well in papers and not in tests" without cheating; "played serious games with [her regarding her] rights as a teacher" under her contract with the College; played "gas lighting games"; somehow involved itself with the University and manipulated her and the "system and facts to 'get me'"; contacted an attorney who had a conflict of interest based on prior representation of the Community College and who mocked her which would not have happened if the University had not defamed her; and the Community College would not "let [her] quit . . . but then charged [her] criminally with harassment because [she] called to quit . . . and would not accept . . . ."[19]

Under Rule 8(a), we have no idea the basis for claims of: defamation; "breaking rules of contracts in intentionally fraudulent ways;" due process; "intentional affliction of abuse;" conspiracy to deny civil rights; and "whistleblowing".

### 1. Ms. Baum-Brunner fails to state a claim for conspiracy to deprive civil rights and denial of due process.

To proceed on conspiracy to deprive civil rights under 42 U.S.C. § 1983, Ms. Baum-Brunner must plead "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[20] A conspiracy requires a meeting of the minds and "a plaintiff must allege a factual basis to support agreement and concerted action – the elements of conspiracy."[21] Ms. Baum-Brunner fails to allege a state actor allegedly depriving her of her civil rights, and, even if there is an alleged state actor, which of the Defendants acted in furtherance of the conspiracy to deprive of her any "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Ms. Baum-Brunner alleges she "ha[s] not been able to get an attorney to help me with this case or some other related cases"[22] as a denial of her civil rights, but we can find no other indication of

6

deprived civil rights.[23] Her inability to retain an attorney in a civil case does not raise a constitutional issue. She has no constitutional right to an attorney in a civil case.[24] Without a state actor, conspirators, and action in furtherance of the conspiracy to deprive her of a right secured by the Constitution or federal law, there can be no conspiracy claim under § 1983.

Ms. Baum-Brunner's claim for "no due process" similarly fails. There is no indication whether Ms. Baum-Brunner alleges a deprivation of substantive or procedural due process guaranteed by the Fourteenth Amendment. In either case, the Fourteenth Amendment "prohibits states from 'depriv[ing] any person of life, liberty, or property, without due process of law . . . ."[25] For the same reasons the conspiracy to deprive civil rights claim fails, Ms. Baum-Brunner's denial of due process claim fails – there is no allegation of a state actor depriving her of any right without due process. She does not plead anything other than a grievance with an investigation into her doctoral dissertation many years ago and a continuing cover-up. Her grievance may have merit but, as pleaded today, is not a constitutional issue.

### 2. Ms. Baum-Brunner fails to plead defamation.

Even assuming we enjoyed supplemental jurisdiction to resolve her Pennsylvania claims, Ms. Baum-Brunner may not proceed with the Amended Complaint. To proceed on a defamation claim under Pennsylvania law, Ms. Baum-Brunner must plead: (1) [t]he defamatory character of the communication; (2) [i]ts publication by the defendant; (3) [i]ts application to the plaintiff; (4) [t]he understanding by the recipient of its defamatory meaning; (5) [t]he understanding by the recipient of it as intended to be applied to the plaintiff; (6) [s]pecial harm resulting to the plaintiff from its publication; and (7) [a]buse of a conditionally privileged occasion.[26]

After studying the Amended Complaint, we discern allegedly defamatory statements: (a) Defendant Lytle "shouted in the halls my guilt, my 'dishonesty,' my 'fraud'"[27]; (b) "Penn says

7

she is so bad, worst they have ever seen, she had to have cheated her entire way through school. She doesn't have the ability to have done any of the work herself";[28] (c) "Penn said I was 'so dumb I could not do college level work,' that I 'had cheated my whole way through school, even since first grade,' that 'I had not even done the study, had made up the entire study, the data, that I had no tapes, no records of original student work or revisions, that my study was total fraud'";[29] (d) Defendant Lowenberg "apparently told one of Susan Lytle's 'researchers' that [Baum-Brunner] had not even collected my data, did not collect the rough drafts or the revisions, did not tape the class";[30] (d) Defendant Rodin "said I lied," apparently to the FBI, "apparently about meeting with her."[31] Ms. Baum-Brunner alleges "these words were said to employers, friends, family, anyone who would listen and be alarmed enough to help 'get me.'"[32] She alleges harm from the allegedly defamatory statements because "this defamation followed me for 27 years to places I lived, to placed I worked, to my family, to my friends: I had no peace for 27 years to live my life in peace and for the world to know me for some true gifts and real accomplishments and successes I had truly earned."[33] We find no defamatory statements attributed to The Philadelphian, the Community College, or Ms. White.

Even assuming the defamatory character of these communications, Ms. Baum-Brunner does not plead who at "Penn" made these statements, who received the communications other than a general reference to "employers, friends, family, anyone who would listen," or how these statements caused harm other than having "no peace for 27 years." Ms. Baum-Brunner fails to plead facts that plausibly give rise to a claim of defamation.

### 3. Ms. Baum-Brunner fails to plead "intentional infliction of abuse."

We construe Ms. Baum-Brunner's *pro se* claim for "intentional infliction of abuse" as one for intentional infliction of emotional distress. A claim for intentional infliction of emotional

8

distress is subject to Pennsylvania's two-year statute of limitations.[34] To proceed for intentional infliction of emotional distress under Pennsylvania law, Ms. Baum-Brunner must plead the Defendants' conduct is "(1) extreme or outrageous; (2) intentional or reckless; and (3) caused severe emotional distress to another."[35] There is sufficient basis for an intentional infliction of emotional distress claim only where there is "the most egregious conduct" and where conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society."[36] "[I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."[37]

Ms. Baum-Brunner offers no facts of "egregious conduct" required to satisfy the pleading standard or when such conduct occurred; Ms. Baum-Brunner refers to disputes with the University and Defendants Lytle and Lowenberg but fails to allege facts to state a claim to relief that is plausible on its face, and we find no allegations of actionable conduct, let alone egregious conduct, against Defendants Rodin, White, The Philadelphian, and the Community College.

### 4. Ms. Baum-Brunner fails to state a claim for "whistleblowing."

Ms. Baum-Brunner claims one or more Defendants retaliated against her for "whistleblowing" under Pennsylvania law. Pennsylvania's Whistleblower Law makes it unlawful for an employer to "discharge . . . or retaliate against any employee . . . because the employee . . . makes a good faith report . . . [of] an instance of wrongdoing or waste by a public body or an instance of waste by any other employer."[38] A "whistleblower" is defined by the statute as "a person who witnesses or has evidence of wrongdoing or waste while employed and who makes a

9

good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority."[39] The statute defines "waste" as "an employer's conduct or omissions which result in substantial abuse, misuse, or destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources" and "wrongdoing" as "a violation which is not of a merely technical or minimum nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."[40]

"To state a cause of action under the Whistleblower Law against an eligible employer, an employee 'must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith ... an instance of wrongdoing or waste to the employer or an appropriate authority.'"[41]

Without alleging employment with any of the Defendants or a report of "wrongdoing or waste by a public body" or "waste by any other employer," Ms. Baum-Brunner fails to state a claim.

### 5. Ms. Baum-Brunner fails to state a breach of contract.

Ms. Baum-Brunner identifies one of her claims as "breaking rules of contracts in intentionally fraudulent ways." Under Pennsylvania law, the required elements of a breach of contract claim are "(1) the existence of a contract, including its essential terms; (2) a breach of the contract; and, (3) resultant damages."[42]

We find a reference to a contract in allegations against The Philadelphian and Community College; "the administration played serious games with me re my rights as a teacher, re my contract. Rules were made up daily and differed from Handbook, all so they could catch a

10

'thief'."[43] However, there is no allegation regarding with whom Ms. Baum-Brunner contracted, the essential terms of any contract, how a Defendant breached a contract, and how Ms. Baum-Brunner is damaged by a breach. Ms. Baum-Brunner fails to allege facts to support these required elements.

### 6. Ms. Baum-Brunner's claims may be time barred.

Even if Ms. Baum-Brunner could invoke our limited jurisdiction and then state a claim, the statute of limitations may bar her claims. This defense, unlike many, may be raised in a motion to dismiss "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."[44]

As currently pleaded, Ms. Baum-Brunner's claims appear to have accrued anywhere from 1990 to 2004. The claims against the University appear to have accrued during Ms. Baum-Brunner's 1990 doctoral program. For example, Ms. Baum-Brunner alleges she is in "harm's way and h[as] been for most of 27 years since the [University] began an investigation of me"; she suffered damages "because of the 27 years of abuse"; Defendant "Susan Lytle has made by life hell for 27 years"; "I have had great difficulties over 27 years"; and "defamation followed me for 27 years."[45] Other allegations occurred in 2004. Ms. Baum-Brunner alleges Defendant Rodin's conduct occurred in 2004, alleging, for example, Dr. Rodin "was warned of these dangers in the 2004 'legal settlement'" and "knew of problems with illegal investigative practices at Penn, at least as of 2004 meetings/docs, if not before."[46] Similarly, the Amended Complaint alleges Defendant Wendy White "knew as well of the 2004 Philadelphia Magazine article and all the illegal activities within Penn as well as with David Lowenberg and she too should have/could have stopped it."[47] To the extent there are any cognizable claims against The

11

Philadelphian, there is no time alleged. Claims against the Community College may have occurred in 2004, although it is not clear.[48]

The statute of limitations for conspiracy to deny civil rights and the state law claim for and intentional infliction of emotion distress is two years.[49] The statute of limitations for a breach of contract claim is four years.[50] The statute of limitations under Pennsylvania's Whistleblower Law is 180 days.[51] The statute of limitations for defamation is one year.[52]

As currently pleaded, the Amended Complaint may be time-barred but we will allow Ms. Baum-Brunner one last chance to amend her complaint if she can do so in good faith mindful of her obligations under Federal Rule of Civil Procedure 11.

### III. Conclusion

In the accompanying Orders, we grant the Defendants' motions to dismiss without prejudice for Ms. Baum-Brunner to file a second amended complaint if she can plausibly plead our subject matter jurisdiction and then correct the multiple pleading defects based upon facts.

---

[1] Ms. Baum-Brunner sued on August 30, 2017 and amended her complaint multiple times (ECF Doc. Nos. 8, 9, 10, and 12). Our December 27, 2017 Order directed Ms. Baum-Brunner to consolidate her multiple amended complaints into one amended complaint (ECF Doc. No. 11). On the same day we entered our December 27, 2017 Order, Ms. Baum-Brunner filed another amended complaint (ECF Doc. No. 12). In response to our December 27, 2017 Order, Ms. Baum-Brunner filed an Amended Complaint (ECF Doc. No. 13). On January 4, 2018, we ordered Ms. Baum-Brunner serve her original Complaint and Amended Complaint on all Defendants (ECF Doc. No. 17). The operative Amended Complaint is ECF Doc. No. 13.

[2] The Philadelphian is a condominium located at 2401 Pennsylvania Avenue, Philadelphia. The Philadelphian Owners' Association – the condominium homeowners' association for The Philadelphian – filed the motion to dismiss. ECF Doc. No. 26 at 2. Ms. Baum-Brunner resides at The Philadelphian. At various points in the Amended Complaint, Ms. Baum-Brunner refers to The Philadelphian as "2401." *See* ECF Doc. No. 13 at 13.

[3] ECF Doc. No. 13 at 2-4.

12

⁴ *Id.* at 3.

⁵ *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977)) (footnote omitted).

⁶ *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska*, 462 F.3d at 302 n. 3).

⁷ *Davis*, 824 F.3d at 346 (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

⁸ *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891).

⁹ *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted).

¹⁰ *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

¹¹ *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

¹² *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

¹³ *Tillio v. Spiess*, 441 F.App'x 109, 110 (3d Cir. 2011) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir.1995) (quotations omitted)).

¹⁴ *Mitchell v. Quinn*, No. 17-3730, 2017 WL 6001494, at *2 (E.D.Pa. Dec. 1, 2017) (quoting *Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017)).

¹⁵ 28 U.S.C. §§ 1331, 1332(a).

¹⁶ Ms. Baum-Brunner does not base our subject matter jurisdiction on diversity, and, from the face of the original complaint, the Defendants reside in Pennsylvania, thus defeating diversity. ECF Doc. No. 1. Ms. Baum-Brunner's amended complaint adds additional defendants Dr. Judith Rodin, a Florida resident, and David Lowenberg, M.D., a California resident. ECF Doc. No. 13. This does not change the diversity analysis because for diversity jurisdiction to exist under 28 U.S.C. § 1332, there must be complete diversity of citizenship between all plaintiffs and all defendants. "This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLV*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).

[17] *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982). Section 1983 provides a cause of action for violations of federal law by state officials. Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .." 42 U.S.C. § 1983.

[18] ECF Doc. No. 13 at 13.

[19] *Id.* at 13-14.

[20] *Marchese v. Umstead*, 110 F.Supp. 2d 361, 371 (E.D. Pa. 2000) (citing *Panayotides v. Rabenold*, 35 F.Supp. 2d 411, 419 (E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000)).

[21] *Berrios v. City of Phila.*, 96 F.Supp. 3d 523, 534 (E.D. Pa. 2015) (citing *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) and quoting *Campeggio v. Upper Pottsgrove Twp.*, No. 14-1286, 2014 WL 4435396, at *8 (E.D. Pa. Sept. 8, 2014)).

[22] ECF Doc. No. 13 at 15.

[23] Ms. Baum-Brunner initially claimed some violation of her Miranda rights and other rights identified in our discussion of subject-matter jurisdiction. She did not repeat these claims in her Amended Complaint nor could we see how those rights apply.

[24] *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997).

[25] *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (citations omitted).

[26] *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015) (citing 42 Pa. Cons. Stat. § 8343(a)).

[27] ECF Doc. No. 13 at 7.

[28] *Id.* at 3, 13.

[29] *Id.* at 15.

[30] *Id.* at 9.

[31] *Id.* at 11.

[32] *Id.* at 15.

[33] *Id.*

[34] 42 Pa. Cons. Stat. § 5524(7).

[35] *Doe v. The Trustees of the Univ. of Pa.*, 270 F.Supp. 3d 799, 826-27 (E.D. Pa. 2017) (citation omitted).

[36] *Hoy v. Angelone*, 720 A.2d 645, 754 (Pa. 1998).

[37] *Id.* (quoting Restatement (Second) of Torts §46, comment d; *Daughen v. Fox*, 539 A.2d 858, 861 (Pa. Super. 1988)).

[38] 43 Pa. Cons. Stat. § 1423(b).

[39] 43 Pa. Cons. Stat. § 1422.

[40] *Id.*

[41] *Johnson v. Res. for Human Dev., Inc.*, 789 F.Supp.2d 595, 601 (E.D. Pa. 2011) (citing 43 Pa. Cons. Stat. § 1424(b)) (footnote omitted).

[42] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp.*, Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002)).

[43] ECF Doc. No. 13 at ¶ 6.

[44] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)).

[45] ECF Doc. No. 13 at 2, 3, 5, 15.

[46] *Id.* at 4, 11.

[47] *Id.* at 12.

[48] *Id.* at 14.

[49] Pennsylvania's statute of limitations for personal injury actions is two years from the date the claim accrued. 42 Pa. Cons. Stat. § 5524. The statute of limitations for § 1983 claims is governed by Pennsylvania's statute of limitations for personal injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007).

[50] 42 Pa. Cons. Stat. § 5525.

[51] 43 Pa. Cons. Stat. § 1424(a).

---

[52] 42 Pa. Cons. Stat. § 5523(1). The University Defendants argue Ms. Baum-Brunner's defamation claims are barred by the one-year statute of limitations. *See* ECF Doc. No. 35 at 5.